The 9th Circuit is now in session. Good morning and welcome to the 9th Circuit. Before we begin, Judge Bybee and I would like to thank Judge Bennett from Maryland for sitting with us. It's really a big help and it's wonderful to sit with you again. Thank you. It's always an honor to be here to sit with him on circuit. Thank you very much. You're welcome. And we have a couple of cases submitted on the briefs and I'll go ahead and submit them now. That's Eric Menchivar-Hernandez v. Garland and Rice v. Paramo. Those cases are submitted on the briefs and they are submitted as of this day. The first case for argument is O'Brien v. McEwen. Counsel, whenever you're ready. Good morning. My name is David Nickerson. I represent Mr. O'Brien. I want to start and spend about three minutes. This is an ineffective assistance at counsel claim. It's very fact-bound and despite repeated attempts, the district court has never got this issue in the right context. So I'd like to spend about three minutes just establishing the context of the claim because everything after that only makes sense if it's understood. The shooting, I'm sorry, I just got off an airplane. I'm kind of losing my speech. You need some water. Go ahead. I'm fine. The shooting was February 26th. Everybody was arrested by March 7th, March 8th. At that time, the prosecution's chief witness, Wellman, gave repeated taped statements to the police, the details of which are not terribly important, except he insisted that the shooting took place after 1130 a.m. Mr. Clark, who was defense counsel, came into the case also in mid-March. From mid-March until December, 10 months, everybody operated under the belief that the prosecution's argument was going to be the shooting took place after 1130. On December 22nd, Mr. Clark disclosed to the other side his alibi defense, phone records, witness statements, witness names, everything, which showed, which I will get to in more detail, that it couldn't have happened at 1130, or it could have happened after 1130, but Mr. O'Brien wasn't there. Fast forward, second day of trial, February, I believe it was the 4th, Mr. Clark gets a report from the prosecution that describes a meeting that took place January 2nd, a month earlier. At this meeting, Mr. Wellman suddenly changes his story. He says, no, it didn't occur after 1130, it occurred between 1030 and 1130. Again, this was not disclosed to Clark until second day of trial. I believe he said it, the evidence you're hearing, they were doing jury selection when he gets this report. So this is Mr. Clark now on the second day of trial. I have this alibi, I have what this court described as a solid alibi for after 1130. Now, all of a sudden, they're saying the shooting took place between 1030 and 1130. I don't have an alibi for that. My records do not cover that because, quite frankly, I didn't investigate that. So he makes a two-part decision at that time. First, I'm not going to do any further investigation, meaning I'm not going to try to get my alibi to go back in time to see if I have coverage of the alibi from 1030 to 1130. Not going to do that. Instead, I'm going to, in his exact words, where I'm going to drill down on Wellman and show that the story he's telling now is a lie. It is not true that the shooting actually happened after 1130. And for that time period, I have alibi evidence. In fact, as I said, this court called it a solid alibi evidence. Couldn't have happened after 1130. If that's a solid alibi, what's wrong with that strategy? Well, that's what I'm about to say. He said, I'm going to show that Wellman was a liar, that he only changed his story because he knew it couldn't be true because everybody knew where O'Brien was after 1130. So he changed his story to an earlier time period. Clark said, that's what I'm going to prove. I'm not going to do any further investigation. I'm going to prove Wellman's lying. Then he never did that. At the evidentiary hearing in the district court, he was asked directly, well, did you do that? He said, no, I didn't do that. So he's stuck with, he's got no alibi evidence for the due time frame, and he fails to cross-examine Wellman on the change of the time, why it occurred, which gets back to the January 2nd meeting. So on cross-examination of Wellman, he didn't bring out the fact that he changed the timeline? They brought up the fact, but here's what happened. They brought up the fact that you changed your story, Mr. Wellman. Is that true? Yes. Why? Well, I've been sitting in jail for the better part of a year, and I've had time to think about it. And the more I thought about it, the more I realized I was off in my timeline. That was his testimony. That was his testimony on direct by the district attorney. Did Mr. Clark ask the detective about the change in the story? Same thing. Did he change it? Yes, he changed it. And did he ask Wellman about his plea agreement? Yes. The plea agreement requires you to tell the truth. Wellman wanted to tell the truth. What he was told at the January 2nd meeting, which the jury never heard, was, oh, Wellman was told your story doesn't add up. It couldn't have happened after 1130, because we know where O'Brien was after 1130. So it doesn't add up. That can't be true. Hearing that, Wellman says, well, I really need to tell the truth, so I'm going to change my story to a story that does fit the facts. Counselor, there was quite a bit of evidence that Mr. O'Brien was present at the robbery and murder. There was no physical evidence. No, but there was evidence that he had told people that things had gone bad. He didn't talk about it over the phone. He would only talk about it in person. No, that's not really true, Your Honor. If you get into those interviews, they don't know what he's talking about. What happened was Mr. O'Brien was about to be taken away and put in a closed-door rehab center in Oregon. That's what he was talking about. We're talking about conversations between 16-year-old high school students. They are reading into things that happened and things that were said that didn't really add up. Was there any other physical evidence to show that the shooting took place after 11? No. So it was all the word of Wellman of when? Correct. And if the jury doesn't believe Wellman, there's no way to convict Mr. O'Brien. But what lies? I mean, I know you list a number of issues, but none of the issues that I saw showed definitively that Wellman lied. He admitted he lied. At the evidentiary hearing in the district court, when you sent it back to them, Wellman testified first. He said, yeah, that story I told at trial is not true. I changed the timing of the story because I was told the timing didn't add up. So therefore, if I'm going to tell the truth, I have to change my story. He admitted that. And then that was right after we asked Clark, did you drill down on him like you said you would and ask him why he changed his story at the January 2nd meeting? No, I didn't ask him those questions, even though that was his plan. That was what he intended to do. He didn't do it. So he didn't cross-examine Wellman at all? What are you saying he did at trial? He crossed-examined him about everything else, like going to the scene, driving around, blah, blah, blah. He crossed that he lied on other occasions also. The January 2nd meeting is the key. That's when Wellman is told in an unrecorded interview, interrogation, whatever you want to call it, that your times don't add up. Clark never asked Wellman about that. And we asked Wellman at the evidentiary hearing, isn't it true you went into this January meeting, you had no idea that the times didn't add up? Nope, never thought about it. Now, all of a sudden, you're being told the times don't add up. It couldn't have happened the way you said it happened. It couldn't have happened in the afternoon, which you have repeatedly said, and everybody, preliminary hearing onward, said, yeah, this happened in the afternoon. Did Mr. Clark present evidence with respect to the earlier time frame that he had previously relied upon? I'm not sure. My question is, there was a key time frame of 1130 to 1 o'clock, or later the time frame changed from 1030 to 1130, correct? Correct. And apart from cross-examination of Wellman, did the defense attorney ever present evidence with respect to the alibi as originally anticipated in terms of the 1130 to 1 o'clock time frame? Well, the short answer to that is yes. But the DA presented a lot of that. A lot of the witnesses that Clark identified in his alibi disclosure, the DA called as his witnesses. There was telephone records. There was people with O'Brien at his house and at other places. Yeah, from 1130 on, we know exactly where O'Brien was every moment. So defense counsel did have information as to what he believed was the original time frame upon which he relied, and he did present evidence as to that? Absolutely. And this court called that a solid alibi that the DA didn't contest. He could not have been anywhere near the shooting if it occurred after 1130. So the question is, this is what Clark set out to do. He didn't do it. He made a strategic choice not to do it, and we now know if he had done it, the alibi would have extended all the way back to 1030, and Wellman was lying. We now know that. That's what the evidence we're hearing in the district court showed. So it's, I hate to say this, but it's kind of a simple case. Clark said, this is what I intended to do, and he didn't do it. You know, I'm just looking at your opening brief. I don't see that precise argument made in your opening brief. That's what I've been making this precise argument for 15 years now, I think. Well, you raised all these specific evidentiary issues that were not raised, that were not properly presented, but you never argued precisely that Clark didn't cross-examine Wellman.  I'm sure I did. In fact, you said it back, you being the court, said it back in 2015, and you expressly referenced paragraph D, which was a bullet point in the opening brief in 2015. Paragraph D says Clark failed to adequately cross-examine Wellman, and Clark failed to introduce evidence that Wellman only changed the timing of the shooting after Clark disclosed his alibi evidence. That was paragraph D. You said it back for hearing on that. Right. We put Clark on the stand. He said, yes, I failed to do that. Then we would put Wellman on the stand, and we asked Wellman the questions Clark should have asked at trial. And Wellman said, yeah, that statement I made at trial, that was false. I only changed the story because they came to me on January 2nd and said, your story doesn't add up. So, therefore, I changed it to an earlier time frame. He didn't say it quite like that, but that's how the testimony came out. Okay. Unless the Court has more questions, of which no. I'll give you some time on rebuttal if necessary. Thank you. Good morning, Your Honors. Good morning. Deputy Attorney General Max Feinstadt on behalf of Respondent. This case is pretty straightforward at this point. Petitioner was given a chance at the evidentiary hearing to attempt to prove the claims that he had previously raised, that counsel was ineffective for failing to present evidence that was available to him that would have improved Petitioner's alibi at trial. And after the evidentiary hearing, he simply did not do that. He did not show that evidence was available to counsel or that admissible evidence was available at all. Regarding the Wellman claim that Petitioner has now raised, it does not appear that Petitioner raised that precise claim in the briefing. To the extent that Petitioner is claiming that Wellman lied or admitted to lying at the evidentiary hearing, we actually have a factual finding from the magistrate that he did not lie. So the question was, why did Wellman change his testimony? And he said repeatedly at the evidentiary hearing, as he did at trial, that I had more time to think about it. I realized that my initial statement regarding the timing wasn't correct. And why that came up? Because he talked to his defense counsel, and defense counsel said, you know, I think there is a problem with your timeline. But he said, I didn't think I needed to change my testimony to any specific time, and I wasn't trying to make up a story in order to save my plea deal. So that's the testimony we have, and that's the— So Clark cross-examined Wellman on the issue of why he changed his story? Clark did at trial. And Clark's plan going into trial, which he did execute, was to try and show that Wellman was a liar. He said going at the evidentiary hearing, he said Wellman was a powerful witness. You know, this is a guy who came into the police station, didn't ask for a lawyer, said, you know, I went on this, what I thought was going to be a robbery, and we ended up killing somebody, and I feel disgusted by it, and this is what happened. So Clark was faced with that, bad witness, and all of a sudden he gets this time change, and he's like, this is good. I can use this, you know, as an argument that he's now trying to just save his deal. So that was the argument he made, and the jury didn't buy it. Did Clark specifically ask that you change it when presented by evidence from the police that his timeline doesn't fit? I don't know if Clark specifically asked that question at trial, but Clark did have an answer from Wellman as to why he had changed his timeline, and bearing down on that further is not necessarily the only tactic that trial counsel has, because as Your Honor is well aware, if you ask that one question too many at trial, you give the witness an opportunity to give a very good and honest answer, as opposed to having the inference and then arguing it during closing argument, which is what Clark did. Right. He emphasized that he changed his story in closing argument. He did. He did. And just again, Your Honors, this is a case of overwhelming evidence. We have two co-defendants. You don't have much physical evidence at the scene, do you? I wouldn't call that overwhelming. Oh, I think it is overwhelming, Your Honor, just because we have two co-defendants saying that he was there, that, you know, he went with them, he orchestrated this robbery and murder. We have J.D. Petty, a friend, unrelated to the other characters, who dropped off a shotgun, picked it up after the robbery with a box of shells, with one missing that matched the shell from the murder. We have evidence that Petitioner talked to Chantal Michaud prior to the robbery. He said he was going to go and rob a house, and then after, where he admitted to her that it had gone wrong and he killed somebody. And then we have all this evidence of all these people he told. Do you agree that there's no objective evidence of the timeline of the shooting, so that Wellman's the only witness to the timeline? No, Your Honor. We have Tyler Dixon's testimony about when he thought—he didn't know exactly when it occurred. But we have some evidence of who he called before and who he called afterwards. You know, we have—so we have a phone record. We have a record of a call at 10-11 to Frankie Cilici, and then we have more phone records of calls occurring around 11-30 from— But that's on his side, not on the victim's side. No, that's on the victim's side. The victim's— Oh, the victim's phone calls? So—well, not—no, not the victim's, sorry, Your Honor. Yeah, I'm saying, like, do you have, like, a time of death, like, based on the coroner and report or something like that? Not anything specific, Your Honor. So, regarding the other evidence, there—we have factual findings from the magistrate. For instance, the petitioner tried to introduce a 10-49, evidence that the petitioner called the auto body shop 10-49. And the magistrate, after hearing the testimony from the employee, said, I don't believe you told defense counsel that you could tell—that you could reconstruct your time and give a specific time that this call occurred. Likewise, petitioner tried to introduce evidence of a call at 11-14, and all he was able to introduce was a cell phone record to—that showed an incoming call, but no number attached to it. So, again, we don't have additional evidence that trial counsel could have introduced the truck. Could you explain the travel time issue? Because I thought that that was the most difficult to square with everything. Yes, Your Honor. Petitioner's alibi—basically, he's trying to get to a block of time based on what he thinks, you know, the jury would have absolutely believed were the start and end points of this endeavor. And at trial, there were—Detective Hoagland testified to three routes that he had traveled. And they were slightly different. They took between 36 and 47 minutes. The 47-minute route involved a five-minute stop at the gun shop as opposed to a 30-second stop at the gun shop. So that accounted for much of that difference in time from the other two routes. And petitioner's argument is that the 47-minute route was based on what Wellman told the detective at the meeting in the Hoagland report. What landmarks did Wellman provide Hoagland? He provided them a couple roads that he thought he had traveled on. But again, this was—so his argument is that he should have specified that, that it was—that route was based on the Hoagland report. And therefore, the jury would have believed it took 47 minutes as opposed to 36. But as the magistrate noted, these are all approximations. The detective doesn't know exactly how long any of these things took. He was driving the speed limit, obeying all traffic signals when he drove these routes. And they are, quite frankly, close in time and all fit within this window when he could have been committing the crime. What's the window that there's—I guess it's based off of phone calls is the window? The phone records—the actual phone records, we have one at 10-11, and then we have phone records starting up again around 11-30. We have an 11-28 phone record from a call from the home phone of Petitioner to J.D. Petty, and then 11-32, et cetera. So you're saying under—no matter which travel route, it would fit into that gap? Exactly, Your Honor. And again, he could have been driving faster than the speed limit. These are all very reasonable inferences that a jury could have made, given just all the testimony indicating that Petitioner was there. Do Your Honors have any more questions for me? No, I think that's it. Thank you, Counsel. Thank you. We'll give you a minute. I want to make this really, really clear, because the district court never got this right. This is from the evidence we're hearing in the district court. Mr. Wellman—this is Clark testifying. Mr. Clark, you didn't ask Mr. Wellman when he changed his story. This is meaning a trial. Clark, I don't believe I did. This is Wellman testifying. He was asked, did you testify to that at trial, that you were informed in January that there was a problem with your story? Mr. Wellman, no. Wellman again, did you change your story because you were sitting in jail or because your lawyer told you that there was a problem with it? Wellman, because my lawyer told me there was a problem. I don't know what could be clearer. Wellman changed the times of the story not because of what he remembered or what happened, but because he was told his times didn't line up. What's your response that Clark made that point during closing? He didn't make that point. He said, I didn't ask him those questions. The record—what Wellman testified at trial was, I've been sitting in jail for 10 months. I had more time to think about it. I realized while I'm sitting there for 10 months that it must have happened earlier than I thought. That was his testimony at trial. He admitted at the evidentiary hearing in the district court that was not true. That was a lie. Clark admitted, I never asked him those questions. That is—there's two parts to this ineffective assistance of counsel claim. Clark failed to cross-examine Wellman adequately, and there was alibi evidence that he could have filled in the gap between 1030 and 11. He just chose not to do any further investigation. It's really that simple. Thank you, counsel. Thank you. This case is submitted.
judges: BYBEE, BUMATAY, Bennett